UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN M. QUILTY,
individually and on behalf
of others similarly situated,

     Plaintiff,

v.                     Case No.: 8:18-cv-341-T-33CPT

ENVISION HEALTHCARE CORP.,
EMCARE HOLDINGS INC.,
EMCARE INC., and BAXLEY
EMERGENCY PHYSICIANS, LLC,

     Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants Envision Healthcare Corp., Emcare Holdings Inc., Emcare Inc., and Baxley Emergency Physicians, LLC's Motion to Dismiss (Doc. # 44), filed on April 4, 2018. Plaintiff Stephen M. Quilty responded on May 4, 2018. (Doc. # 54). Defendants replied on May 18, 2018. (Doc. # 58). For the reasons that follow, the Motion is granted and the case is dismissed.

**I.   Background**

Balance-billing is the practice of an out-of-network healthcare provider billing a patient the difference between the provider's charge for services and the amount (if any) the provider recovered from the patient's insurance. Florida

1

law generally prohibits emergency-care providers from balance-billing patients for out-of-network emergency care services they receive. Fla. Stat. §§ 627.64194, 641.513, 641.3154.

The Defendants provide emergency healthcare services. Specifically, Defendant Envision Healthcare Corp. is a large "publicly traded for-profit nationwide provider of healthcare services, including physician services." (Doc. # 1 at 4). Defendant EmCare Holdings Inc. is "a wholly owned subsidiary of Envision." (Id.). In turn, Defendant EmCare Inc. is "a wholly owned subsidiary of EmCare Holdings Inc." and "a physician practice management company that provides outsourced facility-based physician services for clinicians, hospitals, health systems, and other healthcare clients in the United States." (Id.). Among other things, EmCare Inc. handles "coding and billing services, and customiz[es] financial and staffing models." (Id. at 5). Defendant Baxley Emergency Physicians, LLC — a wholly owned subsidiary of Defendant EmCare Inc. — is "a provider of emergency physician services to hospitals." (Id.).

According to the Complaint, Defendants "have engaged in a corporate scheme to directly bill insured patients for out-of-network [emergency department] services, even though

Florida law prohibits such conduct." (Id. at 11-12). "The purpose of Defendants' actions was to raise corporate revenue and profits at the expense of consumers who are ultimately held accountable by Defendants for the remainder of any unpaid, inflated bills." (Id. at 12). Defendants and their employees do not disclose to patients in the emergency room that the physician is out-of-network for the patient's insurance. (Id. at 13). And, when patients later "contact[] Defendants with billing questions, Defendants mislead the patients by failing to inform [them] that Defendants were not permitted to hold patients liable for their bills, pursuant to state law." (Id.). Defendants thereby induce patients to pay "the bill, believing that the bill is lawful and justified and that non-payment would result in the bill being sent to collections." (Id.).

In 2014, Quilty went to the emergency room of a hospital that was in-network for his HMO plan to treat an injury to his face. (Id. at 14). Baxley was the treating provider for that emergency room, but was not in the network for Quilty's HMO — a fact Quilty was not told. (Id.). Subsequently, Quilty received a bill from the hospital for its services. Under the terms of the policy, Quilty's HMO paid the majority of the

bill, and Quilty paid the remainder. (Id.). Quilty thought that ended the matter.

But then he received another bill for $2,255.01 for Baxley's "out-of-network physician services" provided by a Dr. Nuss. (Id.). This charge especially surprised Quilty because he had not interacted with or been treated by Dr. Nuss – his injury was tended to by a physician's assistant. (Id.). So Quilty called Baxley and "asked why he was being billed for services provided by a physician that never interacted with him." (Id.). The Baxley representative responded that "Dr. Nuss was the on-duty emergency physician at that time and that he was responsible for payment for services rendered in the amount specified on the bill." (Id. at 15). Fearing the effect of the bill being turned over to a collection agency, Quilty paid the bill. (Id.). In short, Quilty alleges that he "received a balance-bill for out-of-network physician services rendered by Defendants." (Id. at 11).

Quilty initiated this putative class action against Defendants on February 8, 2018, asserting claims for violation of Florida's HMO and PPO balance-billing statutes, Fla. Stat. §§ 627.64194, 641.3154, and 641.513, and Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat.

§ 501.201 <u>et</u> <u>seq.</u>, as well as claims for unjust enrichment and declaratory relief. (Doc. # 1). In the Complaint, Quilty seeks to represent a class defined as "All commercially insured beneficiaries that live or reside in Florida who sought emergency medical care at an in-network hospital managed by Defendants and who were subsequently balance-billed for the cost of that care." (<u>Id.</u> at 15). Defendants moved to dismiss the Complaint on April 4, 2018. (Doc. # 44). Quilty responded (Doc. # 54), and Defendants have replied. (Doc. # 58). The Motion is now ripe for review.

## II. <u>Legal Standard</u>

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Additionally, motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the jurisdictional attack is based on the face of the pleadings, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

## III. **Analysis**

Defendants make numerous arguments for why the various counts of the Complaint should be dismissed. The Court will address them one-by-one.

### A. **Standing**

First, Defendants challenge Quilty's standing to bring any claims based on violation of Section 627.64194, Fla. Stat., which is the PPO balance-billing statute. (Doc. # 44 at 5-6). "A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-Orl-40TBS, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016)(citing Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "'The party invoking federal jurisdiction bears the burden of

establishing' standing." <u>Clapper</u>, 133 S. Ct. at 1148 (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992)).

The injury-in-fact requirement is the most important element. <u>Spokeo</u>, 136 S. Ct. at 1547. An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Id.</u> at 1548 (quoting <u>Lujan</u>, 504 U.S. at 560). The injury must be "particularized," meaning it "must affect the plaintiff in a personal and individual way." <u>Spokeo</u>, 136 S. Ct. at 1548 (quoting <u>Lujan</u>, 504 U.S. at 560 n.1). Additionally, the injury must be "concrete," meaning "it must actually exist." <u>Spokeo</u>, 136 S. Ct. at 1548. The Supreme Court in <u>Spokeo</u> emphasized that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." <u>Id.</u> at 1549.

Defendants point out that Quilty's injury (being balance-billed) occurred in 2014 — two years before the PPO balance-billing statute, Fla. Stat. § 627.64194, was enacted. (Doc. # 44 at 6). Defendants reason: "As Plaintiff's alleged experience occurred two years before Section 627.64194 was enacted and there is no indication the statute has retroactive effect, he cannot have standing to assert a claim thereunder."

(Id.). Furthermore, according to Defendants, "[t]he allegations in the Complaint establish that [Quilty] experienced no violation of the PPO balance-billing statute because [he] was not insured through a PPO at the time." (Id.).

Quilty acknowledges that he had an HMO, not a PPO, when he was balance-billed in 2014. (Doc. # 54 at 2). So Quilty does not contest that he was not balance-billed in violation of the PPO balance-billing statute. But he insists that he nevertheless has standing to represent the putative class members who have PPO coverage and were balance-billed. (Id. at 3-5). Quilty argues that "the standing requirement[] for a class representative at the motion to dismiss stage" is "a less significant burden than at class certification." (Id. at 3). According to Quilty, "the proper analysis is whether putative class members were similarly harmed by Defendants' practices" and that Quilty has pled "sufficient facts that he suffered the same injury as proposed class members under the same legal theories." (Id. at 3-4).

The Court agrees with Defendants. Quilty was not injured by a violation of the PPO balance-billing statute, as he did not have a PPO plan when he was allegedly balance-billed and the PPO balance-billing statute was not even in existence at

that time. True, in the context of putative class actions, the standing burden is lower at the motion to dismiss stage than the class certification stage. See <u>Porter v. Chrysler Grp. LLC</u>, No. 6:13-cv-555-Orl-37, 2013 WL 6839872, at \*2 (M.D. Fla. Dec. 27, 2013)(denying motion to dismiss for lack of standing and stating "as the litigation progresses, the named Plaintiffs will have to show by a higher standard of proof that they have Article III standing to raise the class claims before the Court can consider whether they adequately represent the proposed class").

Nevertheless, it is clear from the pleadings that Quilty does not have individual standing to bring a claim based on the violation of the PPO balance-billing statute. Quilty's attempt to cast his injury as the same suffered by PPO-insured putative class members is unavailing. While both Quilty and PPO-insured putative class members were allegedly balance-billed in violation of Florida law, those billings were alleged violations of different statutes. So Quilty and PPO-insured putative class members did not suffer identical injuries and are proceeding under different legal theories.

Therefore, Quilty does not have individual standing to bring a claim under the PPO balance-billing statute, which precludes him from representing class members who were

allegedly billed in violation of the PPO balance-billing statute. See Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1347 (11th Cir. 2001)("Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."). All Quilty's claims are dismissed to the extent they are brought under Fla. Stat. § 627.64194.

## B.  Private  Right  of  Action  and  Presumptive Collectability

Next, Defendants argue that Quilty cannot bring Count I for violation of Florida's balance-billing statutes, Sections 627.64194, 641.513, and 641.3154, because these sections do not create private rights of action. (Doc. # 44 at 7-10). Again, the Court has already dismissed Count I to the extent it is based on violation of Section 627.64194, the PPO balance-billing statute. Thus, the Court need only analyze whether the statutes related to HMOs, Sections 641.513 and 641.3154, establish private rights of action.

As Defendants succinctly explain, Section 641.513 "requires HMOs to cover certain emergency services provided by non-participating emergency providers for their subscriber patients." (Doc. # 44 at 8)(citing Fla. Stat. § 641.513(3)).

Regarding the amount an out-of-network provider may charge an HMO, Section 641.513 states in relevant part:

> Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:
> (a) The provider's charges;
> (b) The usual and customary provider charges for similar services in the community where the services were provided; or
> (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.
> Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

Fla. Stat. § 641.513(5).

Nowhere does Section 641.513 mention that subscribers to HMO plans, like Quilty, may bring a claim for violation of this section. And "it is axiomatic that under Florida law, the judiciary cannot provide a remedy for a violation of the Insurance Code when the legislature has failed to do so." Patel v. Catamaran Health Sols., LLC, No. 15-CV-61891, 2016 WL 5942475, at *5 (S.D. Fla. Jan. 14, 2016)(quoting Lemy v. Direct Gen. Fin. Co., 885 F. Supp. 2d 1265, 1272-73 (M.D. Fla. 2012), aff'd, 559 F. App'x 796 (11th Cir. 2014))(internal quotation marks omitted).

True, one case cited by Quilty involved a Florida court finding an implied cause of action for a healthcare provider against an insurer for violation of Section 641.513(5). See

Merkle v. Health Options, Inc., 940 So. 2d 1190, 1194-98 (Fla. 4th DCA 2006). But that case is easily distinguished. Merkle involved a healthcare provider seeking reimbursement from an HMO for emergency medical services it provided to the HMO's subscribers. Id. Here, Quilty is not a healthcare provider seeking reimbursement from an insurer. He is a subscriber. And nothing in the language of Section 641.513 makes a healthcare provider's balance-billing a subscriber unlawful – only Section 641.3154, *infra*, does that.

Therefore, the language of Section 641.513 does not evince an intent by the legislature to allow a subscriber to bring a claim under that section against a provider for balance-billing. Instead, as the Merkle court explained, "Section 641.513(5) is aimed at protecting non-participating providers who must provide emergency medical services to HMO subscribers, ensuring they are compensated fairly." Merkle, 940 So. 2d at 1196. Therefore, the Court finds that no private right of action for subscribers like Quilty against healthcare providers like Defendants is implied in Section 641.513.

Quilty also seeks to bring Count I for violation of Section 641.3154, which is part of the HMO Act. Section 641.3154 states in relevant part:

> A provider or any representative of a provider,
> regardless of whether the provider is under
> contract with the health maintenance organization,
> may not collect or attempt to collect money from,
> maintain any action at law against, or report to a
> credit agency a subscriber of an organization for
> payment of services for which the organization is
> liable, if the provider in good faith knows or
> should know that the organization is liable.

Fla. Stat. § 641.3154(4). Again, the statute does not expressly create a private right of action for subscribers who are balance-billed by healthcare providers. Indeed, in its entirety, "Florida's 'Health Maintenance Organization Act,' sections 641.17–.3923, Florida Statutes (2005), does not provide a private statutory right of action for damages stemming from a violation of one of the Act's provisions." Health Options, Inc. v. Palmetto Pathology Servs., P.A., 983 So. 2d 608, 613 (Fla. 3d DCA 2008). So, the Court agrees with Defendants that this section does not expressly create a private right of action.

And the Court further agrees that Section 641.3154 does not create a private right of action by implication. Discussing another section within Chapter 641, one Florida court has written: "The courts of this state have long been reluctant to find the legislature intended private parties to have causes of action to enforce statutes like chapter 641, without strong indication that was the legislature's intent.

14

In our view that intent is contraindicated (to use medical jargon) by the context of this statute." The Fla. Physicians Union, Inc. v. United Healthcare of Fla., Inc., 837 So. 2d 1133, 1137 (Fla. 5th DCA 2003).

Here, the legislature has revealed its intent to have the Office of Insurance Regulation (OIR) investigate and punish any entities that violate the regulations of the HMO Act, including Section 641.3154. Another section of the HMO Act, Section 641.3905, provides in relevant part that the OIR

> shall . . . have the power . . . to examine and investigate the affairs of every person, entity, or health maintenance organization in order to determine whether the person, entity, or health maintenance organization is operating in accordance with the provisions of this part [i.e., the HMO Act] or has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by s. 641.3901.

Fla. Stat. § 641.3905. Furthermore, another portion of Section 641.3154 provides: "An organization, the office, and the department shall report any suspected violation of this section by a health care practitioner to the Department of Health and by a facility to the agency, which shall take such action as authorized by law." Fla. Stat. § 641.3154(5). As these sections demonstrate, "the general scheme of [Chapter 641] is to empower the Department of Insurance to enforce the statute's requirements and determine whether the provisions

are being complied with or violated." The Fla. Physicians Union, Inc., 837 So. 2d 1133 at 1135.

Furthermore, Merkle does not suggest that an implied right of action exists under Section 641.3154, as it did not address that section at all. Again, Section 641.513, which Merkle addressed, is not part of the HMO Act. And the HMO Act specifies that the OIR is to investigate alleged violations. Therefore, the legislature has given a clear signal that it intends only for enforcement by the OIR. Therefore, Quilty cannot maintain his claim for violation of Section 641.3154.

Count I is dismissed in its entirety. No private right of action exists under either Section 641.513 or Section 641.3154 for subscribers like Quilty. And, the Court has already ruled that Quilty does not have standing to pursue a claim under Section 627.64194, the PPO balance-billing statute.

## C. **FDUTPA Claim**

According to Defendants, Count II for violation of FDUTPA fails because the balance-billing statutes are exempted from FDUTPA and the Complaint's allegations fail to state a FDUTPA claim or satisfy Rule 9(b). (Doc. # 44 at 12).

Regarding exemption, Defendants state that FDUTPA "does not apply to any person or activity regulated under the laws

administered by Florida's Office of Insurance Regulation of the Financial Services Commission." (Doc. # 44 at 12). Furthermore, Defendants insist that "the activity that is the subject of the lawsuit, improper balance-billing, falls within the OIR's jurisdiction and is exempted." (Id.).

FDUTPA specifies that it does not apply to "[a]ny person or activity regulated under laws administered by: (a) The Office of Insurance Regulation of the Financial Services Commission." Fla. Stat. § 501.212(4)(a). "Florida courts resolve questions about the applicability of section 501.212(4) by looking to the activity that is the subject of the lawsuit and determining whether the activity is subject to the regulatory authority of the [OIR]." State v. Beach Blvd. Auto. Inc., 139 So. 3d 380, 387–88 (Fla. 1st DCA 2014)(citation omitted).

Here, Quilty alleges Defendants balance-billed him in violation of Florida's balance-billing statutes, which are part of Florida's Insurance Code (Chapters 624-651). The OIR has the power to investigate and enforce the provisions of the Insurance Code. Fla. Stat. § 624.307. And the HMO Act, within the Insurance Code, specifically addresses unfair or deceptive acts and practices to be investigated by the OIR. Section 641.3901 states: "No person, entity, or health

maintenance organization shall engage in this state in any trade practice which is defined in this part as, or determined pursuant to s. 641.3905 to be, an unfair method of competition or an unfair or deceptive act or practice involving the business of health maintenance organizations." Fla. Stat. § 641.3901. And, again, Section 641.3905 provides in relevant part that the OIR

> shall . . . have the power . . . to examine and investigate the affairs of every person, entity, or health maintenance organization in order to determine whether the person, entity, or health maintenance organization is operating in accordance with the provisions of this part [i.e., the HMO Act] or has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by s. 641.3901.

Fla. Stat. § 641.3905.

The Court agrees with Defendants that the OIR regulates the activity of balance-billing as it is tasked with investigating violations of the Insurance Code, which contains the balance-billing statutes. The fact that Defendants are not HMOs themselves is irrelevant. By the statutory language, the OIR is able to investigate not only HMOs, but also other entities – including health care providers like Defendants — in order to ensure compliance with the HMO Act. And, indeed, Section 641.3154 within the HMO Act contemplates that providers like Defendants would be

the ones balance-billing patients. Therefore, Quilty's claim cannot be enforced through FDUTPA, as improper balance-billing is an activity regulated by the OIR.

Because the Court finds that improper balance-billing is conduct exempt from FDUTPA, the FDUTPA claim is dismissed. The Court need not address Defendants' other arguments for dismissal of this claim.

### D.  <u>Unjust Enrichment</u>

Defendants contend that Count III, for unjust enrichment, should be dismissed because statutory violations "cannot give rise to a common law unjust enrichment claim" and the Complaint's "allegations establish that Defendants were not unjustly enriched." (Doc. # 44 at 17).

The elements of a cause of action for unjust enrichment under Florida law are: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." <u>Lewis v. Seneff</u>, 654 F. Supp. 2d 1349, 1369 (M.D. Fla. 2009).

The Court agrees with Defendants that Quilty cannot establish an unjust enrichment claim based on violations of

the HMO balance-billing statutes, Sections 641.3154 and 641.513. The Court has already determined that the legislature did not provide private rights of action for violations of these sections. And "a plaintiff 'may not evade the Florida legislature's decision to withhold a statutory cause of action' for a violation of the insurance code 'by asserting common law claims based on such violations.'" Lemy, 885 F. Supp. 2d at 1273 (quoting Buell v. Direct General Ins. Agency, Inc., 267 F. App'x 907, 909-10 (11th Cir. 2008)); see also Hucke v. Kubra Data Transfer, Corp., 160 F. Supp. 3d 1320, 1326 (S.D. Fla. 2015)("Where, as here, the plaintiff alleges no injury apart from violation of the statute [that does not create a private right of action], the Court agrees . . . that there must be 'something more,' in terms of statutory language or public policy, to allow the plaintiff to bring a restitution-based cause of action based solely on violation of the statute.").

The cases cited by Quilty do not alter the Court's conclusion. Those cases involved different statutes outside the Insurance Code that included language implying the underlying agreements that gave rise to the charges were void and unenforceable. See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 583 (11th Cir.

2013)(allowing unjust enrichment claim to proceed based on payments State Farm made to an unlicensed clinic because, although the Clinic Act did not create a private right of action, it included mandatory language that charges by an illegal unlicensed clinic are "noncompensable and unenforceable"); accord Allstate Ins. Co. v. Vizcay, 826 F.3d 1326 (11th Cir. 2016).

In short, Quilty cannot assert the common law claim of unjust enrichment for violation of the HMO balance-billing statutes. See Sapuppo v. Allstate Floridian Ins. Co., No. 12cv382-RH/CAS, 2013 WL 6925674, at *4-5 (M.D. Fla. Mar. 12, 2013), aff'd 739 F.3d 678 (11th Cir. 2014)(dismissing claims for breach of contract, unjust enrichment, and breach of fiduciary duty after determining that no private cause of action existed under the Insurance Code for the alleged violations).

### E. Declaratory Judgment

In Count IV, Quilty seeks "a judicial determination of whether Defendants' acts and practices described in this Complaint violate the laws of Florida and/or other states so that (1) the rights of [Quilty] and the Class may be determined with certainty for purposes of resolving this litigation; and (2) so that the parties and the marketplace

have a consistent understanding of Defendants' legal obligations moving forward so that patients are not at risk of being unlawfully balance-billed for future healthcare services." (Doc. # 1 at 23).

According to Defendants, Quilty "is essentially seeking an 'obey-the-law' injunction which runs afoul of Federal Rule of Civil Procedure, Rule 65(d)." (Doc. # 44 at 20). The Court disagrees that Quilty is seeking an "obey-the-law" injunction. Quilty merely seeks a declaration that Defendants' conduct violates the HMO balance-billing statutes.

Nevertheless, the Court finds that the declaratory judgment claim should be dismissed because the HMO balance-billing statutes do not create private rights of action. See Millenium Labs., Inc. v. Universal Oral Fluid Labs., LLC, No. 8:11-cv-1757-MSS-TBM, 2012 WL 12905083, at *4 (M.D. Fla. Apr. 25, 2012)("Plaintiff is also unable to seek declaratory relief as to Florida Statutes §§ 817.505, 456.054, and 483.245 because none of these statutes appear to imply a private right of action."). "Many courts, including the Eleventh Circuit, have held that a claim for declaratory relief must be dismissed where there is no private right of action available for an alleged statutory violation." Id. at *3; see also

<u>Florida v. Seminole Tribe of Fla.</u>, 181 F.3d 1237, 1250 (11th Cir. 1999)(affirming dismissal of claim where plaintiff sought judgment declaring tribal gaming was being unlawfully conducted because the Indian Gaming Regulatory Act did not create a private cause of action).

The reasoning behind the prohibition on declaratory relief regarding statutes that do not create private rights of action is especially strong here, where a state agency or department is charged with investigating and declaring violations of the statutes at issue. In the context of another section of the HMO Act that did not create a private right of action, a Florida court refused to declare that certain conduct violated the statute:

> Neither provision expressly or impliedly authorizes a private suit brought for purposes of enforcing or declaring violations of the statute. Indeed, **if in the context of a declaratory judgment, a circuit court found that statutory violations were ongoing or in existence, its judgment would either be advisory and still require the Department [of Insurance] to take action, or it would usurp the jurisdiction of the Department to investigate, find violations of and enforce the provisions of the statute**. Conceivably the Department might disagree with a circuit court about the existence of a violation or the method to remedy it. And, there would be no ready appellate mechanism to resolve the dispute.

<u>The Fla. Physicians Union, Inc.</u>, 837 So. 2d at 1137 (emphasis added). The Court shares this concern. A declaration by this

Court about the legality of Defendants' conduct would usurp the authority of the OIR to investigate alleged violations and enforce the HMO balance-billing statutes. Therefore, the Court dismisses Count IV.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants Envision Healthcare Corp., Emcare Holdings Inc., Emcare Inc., and Baxley Emergency Physicians, LLC's Motion to Dismiss (Doc. # 44) is **GRANTED.**

(2) All Counts of the Complaint are **DISMISSED.**

(3) The Clerk is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 31st day of May, 2018.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE